UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORDAIN CHAMBERS,

    Plaintiff,

v.                                                  Case No.: 8:20-cv-2794

CITY OF LAKELAND,

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE PRAYER FOR PUNITIVE DAMAGES

Defendant, CITY OF LAKELAND, by and through the undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) and Local Rule 3.01(a), hereby moves to dismiss all Counts of Plaintiff's, JORDAIN CHAMBERS, Complaint (Dkt. 1) and moves to strike Plaintiff's prayer for punitive damages. Regarding the Motion to Dismiss, both Counts of the Complaint fail to state a cause of action because there are insufficient factual averments to satisfy the *Twombly* and *Iqbal* pleading standards. Regarding the Motion to Strike, Plaintiff is statutorily precluded from recovering punitive damages against Defendant, as Defendant is a political subdivision of the State of Florida. In support hereof, Defendant provides the following Memorandum of Law:

**MEMORANDUM OF LAW**

I. **Motion to Dismiss Complaint**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The federal rule does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 678. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the court must accept a plaintiff's allegations as true when considering a motion to dismiss, a plaintiff's unsupported conclusions of law or mixed fact and law, "unwarranted factual deductions," and "legal conclusions masquerading as facts" will not prevent a Rule 12(b)(6) dismissal. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Plaintiff's Complaint raises a total of two counts against Defendant: (I) employment discrimination on the basis of gender, pursuant to Title VII; and (II) discriminatory retaliation, pursuant to Title VII. Count I appears to conflate two different causes of action available under Title VII: disparate treatment

discrimination and hostile work environment harassment. In an abundance of caution, Defendant will address each of Count I's theories of liability as if they were presented independently. Count I appears to conflate two different causes of action available under Title VII: disparate treatment discrimination and hostile work environment harassment. These are separate and distinct causes of action that must be separated into their own counts pursuant to Rule 10(b). This notwithstanding, Defendant in an abundance of caution addresses each of Count I's theories of liability as if they were presented independently.

### a. Plaintiff Fails to State a Claim for Gender-Based Disparate Treatment (Count I)

Title VII of the Civil Rights Act, found at 42. U.S.C. §§ 2000e *et. seq.*, serves as the backbone of federal employment discrimination legislation, as it proscribes discrimination on the grounds of race, color, religion, sex, or national origin. Similarly situated employees may not be treated differently solely because they differ with respect to race, color, religion, sex, or national origin, and this is true regardless of whether the discrimination is directed against majorities or minorities. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71-72 (1977). There are two distinct Title VII theories of racial discrimination: disparate treatment and disparate impact. 42 U.S.C. § 2000e-2(a)(1) governs the former, making it unlawful:

> for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, or national origin[.]

To prevail on a disparate treatment claim, a Title VII plaintiff must demonstrate that an employer intentionally discriminated against her on the basis of a protected characteristic. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Contrarily, a disparate impact claim, governed by 42 U.S.C. § 2000e-2(k)(1), targets an employment practice that has an actual, though not necessarily deliberate, adverse impact on protected groups. *Id.*

Count I of Plaintiff's Complaint alleges that the harassment was intentional and targeted (Dkt. 1 ¶¶ 12-13, 19, 21) and that she was treated differently than similarly situated male officers (Dkt. 1 ¶¶ 9-11), and thus the claim is one of disparate treatment rather than disparate impact. The question in a disparate treatment case is "whether the protected trait *actually motivated* the employer's decision." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (*emphasis* added). Thus, a Title VII plaintiff alleging disparate treatment on the basis of gender must aver enough "factual content to allow a court to draw the reasonable inference" that the defendant is liable for *intentional* gender discrimination. *Iqbal*, 556 U.S. at 678-79 (explaining that the plausibility standard requires more than a mere possibility).

Here, Plaintiff has not provided any factual matter to suggest that Plaintiff's gender *actually motivated* Defendant to *intentionally* discriminate against Plaintiff in her employment. Plaintiff at most alleges that "Defendant

permitted its Sargent [sic] to assign more work to Plaintiff than was assigned to similarly situated male employees" (Dkt. 1 ¶ 20) and that "Plaintiff had to work harder and under harsher terms than similarly situated male employees" (Dkt. 1 ¶ 41). Plaintiff does not allege the name of the sergeant, what additional assignment she was given, how she had to work harder and/or what harsher terms she was forced to work in. These relevant facts are required and necessary in order for Plaintiff assert a claim sufficient for Defendant to respond to as a matter of law. Nowhere in the Complaint does Plaintiff aver any facts indicating that the discrimination was *intentional*. Plaintiff merely incants the disparate treatment standard as if that were sufficient to state a cause of action. (Dkt. 1 ¶¶ 12-13, 19, 21). Plaintiff's barebones, conclusory allegations fall far short of the *Twombly* and *Iqbal* pleading standards, and thus Count I is due to be dismissed.

### b. Plaintiff Fails to State a Claim for Hostile Work Environment Discrimination (Count I)

Count I of Plaintiff's Complaint also appears to be a claim for hostile work environment harassment pursuant to Title VII. (Dkt. 1 ¶¶ 16, 18, 25, 30, 36-41 (using the terms "harassment" and "micro-aggressions")). To state a *prima facie* claim for hostile work environment harassment, a plaintiff must plead that (1) the plaintiff belonged to a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment complained of was based on the plaintiff's membership in the protected group; (4) the harassment was severe or pervasive enough to alter the terms and conditions of employment and create a

5

hostile or abusive working environment; and (5) the employer is responsible for that environment under either a theory of vicarious or of direct liability. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). Harassment is only sufficiently severe and pervasive if a reasonable person would perceive the working environment to be hostile or abusive: i.e., the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Id.* at 1299; *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). This objective determination consists of four main factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)). The U.S. Supreme Court has consistently held that harassment does not include "simple teasing, offhand comments, and isolated incidents (unless extremely serious)," as those "will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Here, much like the disparate treatment claims discussed prior, Plaintiff has not provided any factual matter from which a reasonable person could conclude that the working environment was sufficiently hostile or abusive under the *Jones* and *Faragher* standards or that the harassment was based on

Plaintiff's gender. Plaintiff at most alleges that her Sergeant would make comments over the radio that were intended to humiliate Plaintiff and assign her unfair work assignment (Dkt. 1 ¶¶ 13, 19). However, Plaintiff does not explain what those comments were, what those unfair work assignments were, or how either of those were in any way related to Plaintiff's gender. Beyond that, Plaintiff merely avers *ipso facto* that the harassment was severe and pervasive. Without specific factual allegations on the required elements; Plaintiff's Complaint fails to state a claim upon which relief can be granted. (Dkt. 1 ¶¶ 16, 18). The manifest, abject nonexistence of factual averments in the Complaint renders impossible the task of determining whether the Plaintiff has alleged, on the face of the Complaint, sufficiently severe and pervasive harassment to state a claim for hostile work environment harassment. Accordingly, to the extent that Plaintiff alleges a hostile work environment claim premised on harassment, Plaintiff fails to plead sufficient factual matter to satisfy the *Twombly* and *Iqbal* pleading requirements for such a claim. Count I is therefore due to be dismissed.

Insofar as Plaintiff cites "routine micro-aggressions" (Dkt. 1 ¶ 37), Plaintiff once again falls short of the *Twombly* and *Iqbal* pleading standards. Plaintiff does not factually specify the acts that were "routine micro-aggressions," and so it is impossible for the Court or Defendants to evaluate whether the Plaintiff has alleged, on the face of the Complaint, sufficiently severe and pervasive harassment to state a claim for hostile work environment harassment. Without the factual allegations the Complaint requires dismissal as a matter of law. By

7

default, "micro-aggressions" lack the severity required to sustain a hostile work environment claim under Title VII:

> Microagressive acts often fall outside the scope of Title VII protections. That is because when an employee is harassed by fellow workers or by management, protections are only triggered if such harassment is severe enough to create a work environment that is pervasively hostile, and appears as such to an ostensibly "neutral" and fictional "reasonable person." … Microaggresive acts such as occasional snide comments, eye-rolling, or heavy sighing, for example, are not constitutive of a "hostile work environment," unless they are part of a wider range of conduct sufficient to constitute a hostile work environment.

Kristina Benson, *THE FREEDOM TO BELIEVE AND THE FREEDOM TO PRACTICE: TITLE VII, MUSLIM WOMEN, AND HIJAB*, 13 UCLA J. Islamic & Near E. L. 1, 16-17 (2014); *see also Weinberg v. William Blair & Company, LLC*, No. 12-cv-09846, 2015 WL 5731637, at *6 (N.D. Ill. Sep. 30, 2015) (finding that micro-aggressions were more akin to "mere offensive utterances" than "physically threatening or humiliating statements," and were thus insufficient to create an actionable hostile work environment claim). Incidents of discrimination this minor cannot form a sufficient basis for a Title VII hostile work environment claim. *Faragher*, 524 U.S. at 788. Accordingly, to the extent as Plaintiff attempts to state a claim for hostile work environment harassment based on "micro-aggressions," the same is categorically insufficient and is due to be dismissed.

### c. Plaintiff Fails to State a Claim for Discriminatory Retaliation (Count II)

In addition to prohibiting discrimination based on race, Title VII also prohibits employers from retaliating against employees based on the employee's

opposition to employment discrimination or complaint of discrimination. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter [the "opposition clause"], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [the "participation clause"]"). A Title VII plaintiff must prove a *prima facie* case of retaliation by establishing that (1) he engaged in statutorily protected activity, (2) an adverse employment decision was taken against him, and (3) a causal link between the protected actions and the adverse employment decision. *Hamm v. Members of Board of Regents*, 708 F.2d 647, 654 (11th Cir. 1983). Here, Plaintiff appears to assert an "opposition clause" case, as Plaintiff does not allege that any formal EEOC complaint procedures caused the alleged retaliation, as would be required in a "participation clause" case. (Dkt. 1 ¶ 27). Though Plaintiff does allege that she filed a charge of discrimination with the EEOC, Plaintiff alleges that the EEOC charge occurred after the alleged retaliation (Dkt. 1 ¶¶ 29-30); thus the retaliation could not have been due to Plaintiff filing the EEOC charge.

Retaliation claims under Title VII can only be proven "according to traditional principles of but-for causation, not the [motivating factor] test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the

employer." *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013). "This is true both ultimately and at the prima facie stage." *Montgomery v. Board of Trustees of the Univ. of Ala.*, No. 2:12-CV-2148-WMA, 2015 WL 1893471, at *4 (N.D. Ala. April 27, 2015); *see also Askins v. Belissary*, No. 4:12-CV-1856-RBH, 2014 WL 507279, at *6 (D.S.C. Feb. 6, 2014).

After *Nassar*, courts have held that a plaintiff must plead more than a close temporal proximity between the protected activity and the adverse employment action, as this factor by itself is insufficient to establish the causal connection of the prima facie case. *Id.* at *3-6; *see also Reaves v. Penn. State Police*, 597 Fed. Appx. 92, 97 (3d Cir. 2015) ("We consider a 'broad array of evidence' in determining whether the plaintiff can show the requisite causal link" and temporal proximity is but one of those factors). The *Montgomery* court cited to an Eleventh Circuit opinion discussing the danger of assuming causation from temporal proximity in another context:

> The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. It literally means "after this, because of this." Black's Law Dictionary 1186 (7th ed. 1999). It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.

*Montgomery*, 2015 WL 1893471, at *4 (quoting *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005)). Even the courts that have allowed temporal proximity alone to establish causation have uniformly held that the temporal proximity must be "very close." *See, e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3 month period insufficient).

Here, Plaintiff's Complaint is facially deficient as to causation. Plaintiff alleges that she "formally complained" about sex discrimination on or around September 20, 2019, that Defendant began investigating Plaintiff "shortly after," and that Defendant ultimately placed Plaintiff on probation. (Dkt. 1 ¶¶ 26-28). Plaintiff makes no other factual causation allegations in her Complaint, and instead relies exclusively on the "temporal proximity" of her "formal complain[t]" to establish causation. Plaintiff does not aver that Plaintiff's gender discrimination complaint was the subject of the investigation or that Plaintiff was ultimately placed on probation due to the complaint. (Dkt. 1 ¶¶ 27-28). This, according to *Nassar* and its progeny, is insufficient to state a claim for Title VII retaliation.

Plaintiff simply fails to provide any, let alone sufficient, factual detail to support her claim that Defendant retaliated against her but for her "formal complaint." Count II of the Complaint requires both the Court and Defendant to make too many assumptions and inferences to conclude that Plaintiff has raised a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Count II of the Complaint does not satisfy the *Twombly* and *Iqbal* fact-pleading standards and is therefore due to be dismissed. Further, Plaintiff has failed to allege facts to report the element that Plaintiff suffered an adverse employment action; Plaintiff only alleges in concluding fashion that she was investigated and put on probation without any factual argument regarding the who, the what, and or timeframe making up the conclusion. Although Plaintiff alleges she has not been eligible for

a raise or secured a position to another department, Plaintiff does not identify sufficient facts to support the conclusion, including, but not limited to the timeframe she was on probation, whether she was denied a raise and/or what if any position she sought a transfer to but was otherwise denied.

II. **Motion to Strike Prayer for Punitive Damages (All Counts)**

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading any immaterial matter. In order to properly plead entitlement to relief, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Federal law permits a plaintiff of a Title VII intentional discrimination claim (42 U.S.C. § 2000e-2) or Title VII retaliation claim (42 U.S.C. § 2000e-3) to recover punitive damages against a defendant if that defendant discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(a)(1). However, such a plaintiff may not recover § 1981a punitive damages against "a government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1); *Hodge v. Orlando Utils. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *6-7 (M.D. Fla. Nov. 23, 2009) (collecting cases). Florida law defines "political subdivisions" of the State of Florida to include, *inter alia*, cities in the State of Florida. § 1.01(8), Fla. Stat.

Here, Plaintiff prays for punitive damages in each of Counts I and II against Defendant. The face of the Complaint reveals that Defendant, City of Lakeland, is a city of, and therefore a political subdivision of, the State of Florida.

(*See* Dkt. 1 ¶¶ 1, 3 (asserting that venue is proper in the Middle District of Florida because a substantial part of the events or omissions giving rise to the claim occurred in this District), 6). Plaintiff cannot recover punitive damages against Defendant for any of the Title VII claims set forth in the Complaint. Accordingly, Plaintiff's prayers for punitive damages in those Counts are due to be stricken.

### III. Conclusion

WHEREFORE, Defendant, CITY OF LAKELAND, respectfully requests that the Court dismiss all Counts of Plaintiff's, JORDAIN CHAMBERS, Complaint without prejudice and strike Plaintiff's prayers for punitive damages in all Counts.

### IV. Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), counsel for Defendant has conferred telephonically with counsel for Plaintiff in a good faith effort to resolve the Motion to Dismiss and the Motion to Strike. The parties do not agree on the resolution of the Motion to Dismiss or the Motion to Strike.

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of March, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Bernard R. Mazaheri
Florida Bar No. 643971
Mazaheri & Mazaheri
325 Shelby Street
Frankfort, KY 40601
Tel: (502) 475-8201
bernie@thelaborfirm.com
Counsel for Plaintiff

                                             CAMPBELL TROHN
                                               TAMAYO & ARANDA, P.A.

                                             */s/ Robert Aranda*
                                             Robert Aranda, Esq.
                                             Florida Bar No. 988324
                                             Edward B. Kerr, Esq.
                                             Florida Bar No. 1018861
                                             1701 South Florida Avenue
                                             Lakeland, FL 33803
                                             Tel.: (863) 686-0043
                                             Fax: (863) 616-1445
                                             r.aranda@cttalaw.com
                                             e.kerr@cttalaw.com
                                             p.roop@cttalaw.com
                                             Counsel for Defendant