UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORDAIN CHAMBERS,

    Plaintiff,

v.                                                    Case No.: 8:20-cv-2794

CITY OF LAKELAND,

    Defendant.

_____/

### AFFIDAVIT OF JAMES ROBERTS

STATE OF FLORIDA

COUNTY OF POLK

    PERSONALLY APPEARED before me, the undersigned authority, JAMES ROBERTS ("Affiant"), who being first duly sworn, deposes and says:

1. That Affiant is a natural person over the age of eighteen (18) years.

2. That Affiant has worked as a law enforcement officer for over thirty-two (32) years.

3. That Affiant is currently the Undersheriff of Hardee County, Florida with a rank of Colonel at the Hardee County Sheriff's Office.

4. That Affiant worked thirty-one (31) years as a law enforcement officer for the Lakeland Police Department. In the early part of 2019, Affiant was the Sergeant in charge of the Southwest District of the "alpha" squad. Affiant was reassigned to the Northeast District in September 2019, after Jordain Chambers

**EXHIBIT B**

filed Employee Incident Report 19-050 with the Office of Professional Standards. The reassignment was part of Lakeland Police Department protocol to ensure Affiant was not in a supervisory position over Jordain Chambers while her complaint was investigated. While Affiant was the Sergeant in charge of the Southwest District, Affiant was Jordain Chambers' direct supervisor.

5. That, on June 11, 2019, Jordain Chambers drove to an investigation into narcotic activity and informed Communications that she was responding to assist in the investigation. Chambers had not discussed this with Affiant or informed Affiant of this. Affiant had not heard that any of the investigating officers or their supervisor had requested Chambers to assist. With the intent of determining why Chambers had gone to the call and determining whether she was available, Affiant inquired over the radio whether Chambers was responding to conduct a search of a female suspect. As the Sergeant in Charge, it was Affiant's responsibility to monitor the location of officers to ensure the efficient use of resources. My inquiry into why Jordain Chambers was responding to the location was simply to understand the need to have her respond in light of the other officers present at the scene.

6. That on June 14, 2019, Jordain Chambers began her shift at 10:00 a.m. and broadcast that she was out working on reports and subject to call. At approximately 10:44 a.m., Officer David Kaiser was dispatched to a domestic violence complaint. Affiant informed Communications to reassign the domestic violence complaint to Chambers and to cancel the call to Officer Kaiser. The

request to reassign the call was because Officer Kaiser had been on shift longer and had already responded to numerous calls while Jordain Chambers had just come on shift. Additionally, Jordain Chambers never communicated to Affiant that she was holding reports from previous shifts.

7. That, in response to my reassignment of the call, Jordain Chambers sent Affiant a text message stating that she was behind on reports, but that Officer Kaiser was not. Affiant responded that Officer Kaiser had been answering calls all morning and that Chambers had just come on shift. Chambers replied starting with "Excuse me, but..." and then continuing to explain why she was behind on reports. Affiant then instructed Chambers to meet him at the station. Affiant intended to discuss the perceived tone of her text message and the reports she was behind on. Affiant asked Sgt. Jeff Gary to be present at the meeting.

8. That, at the time of the above exchange, Affiant had no knowledge that Jordain Chambers was behind on reports from the previous shift.

9. That Jordain Chambers appeared for the meeting at the station with Affiant and Jeff Gary. There, Affiant informed Chambers that he wanted to give her the benefit of the doubt and asked if the words "excuse me" were intended to be professional or sarcastic. Chambers replied that it was sarcastic slang and was how things were done up north. When asked about being behind on reports, Chambers informed Affiant and Gary that Sgt. Doug Mills, who was her officer in command in the evening hours, had instructed her to broadcast that she was out working on reports and subject to call and to work on the reports immediately. Sgt.

Mills lacked the authority to tell her to broadcast busy with reports during Affiant's shift.

10. That, in the June 14, 2019 meeting, Jeff Gary and Affiant noted that Jordain Chambers called them quite often because she seemed unsure on how to work certain calls for service. Affiant was aware that Chambers had received an injury during training and had been put on light-duty as a result. Affiant asked Officer Chambers if she felt she was adequately trained, to which she responded in the affirmative. Affiant instructed Chambers to cease calling him in the future and asking for such help unless she could provide possible solutions first. Affiant advised Chambers to work through her calls and to become a problem-solver before calling him in the future. Affiant made such remarks in accordance with his responsibility as supervisor to "take a personal…interest in their subordinates, encouraging each to use initiative in solving problems" pursuant to General Order 1.4.4(H). The above discussions resulted no adverse employment action including in any way being documented in Jordain Chambers' employment file.

11. That, on June 28, 2019, Affiant was contacted by Ms. Evelyn Berrazueta, a secretary in the Uniform Patrol Division of the Lakeland Police Department, regarding Chambers failing to timely and properly respond to five electronic witness subpoenas from February 11 to May 28, 2019. Affiant counseled Chambers on this later that day, informed her of the relevant General Orders, and provided her with copies thereof.

12. That, in the June 28, 2019 meeting, Affiant and Chambers also discussed Chambers' reasons for working the "10-10 shift" as "small-talk." At the time, the 10-10 shift was not considered a desirable shift to work, so Affiant took interest in Chambers' expressed desire to work the 10-10 shift over other shifts.

13. That, at approximately 5:14 p.m. on July 13, 2019, Affiant reassigned a call for service on a child abuse investigation from Officer Balser to Chambers. Affiant did so for the following primary reasons:

   a. Officer Balser's shift was to end at 6:00 p.m. and Affiant did not want the Department to pay overtime when there were two relief shift officers available (Chambers and Officer Sanchez);

   b. The only other relief shift officers besides Chambers and Sanchez was off due to a military drill;

   c. The two officers that normally covered the area of the call were unavailable: one was off due to a vacation request, and the other was off due to a sick request; and

   d. Between the two remaining choices, Affiant assigned the call to Chambers instead of Sanchez due to the workload balance of each. Between 10:00 a.m. and 5:00 p.m., Officer Sanchez worked *seven* calls for service whereas Chambers had only worked *one* call for service, which was a police service call that took approximately forty-one (41) minutes to complete and required no written report.

14. That, on September 3, 2019, Chambers had responded to a shoplifting complaint as back-up for Officer Christopher Bolen. Chambers had been dispatched as a back-up officer because Communications had advised that the suspect in custody was female. After Chambers had been on scene for around an hour, Affiant asked Officer Bolen if Chambers was still needed on scene. Officer Bolen advised that there were two minor children that required attention and that Chambers would be leaving shortly. Affiant was not aware that there were minor children present during the arrest.

15. That, at approximately 3:12 p.m. on September 3, 2019, Chambers advised Communications that she was busy on reports at the station. At approximately 4:00 p.m., Affiant asked Chambers over the radio for her status, to which she replied that she was busy on reports. At approximately 6:00 p.m., Chambers changed her status to "out of service, subject to call – on reports" but was still shown as busy at the station with reports. Affiant checked the CAD GPS and saw that Chambers was not located at the station as she had advised Communications. Affiant asked Chambers over the radio why her GPS showed she was not at the station when her CAD showed she was at the station.

16. That, at approximately 3:40 p.m. on September 8, 2019, Affiant reassigned a vehicle crash investigation in the Southeast District from Officer Kaiser to Chambers for the following reasons:

    a. Affiant and Sgt. Gary had agreed months prior to the following protocol for managing the south districts: first, officers are

responsible for their zones, and second, officers are responsible for their district;

b. Officer Kaiser was assigned to the Southwest District; and

c. Chambers was the only available unit in the Southeast District at the time.

17. That, of all of the above incidents, the only one that appears in Chambers' personnel file are the verbal counseling regarding electronic subpoenas. The electronic subpoena complaint was not initiated by Affiant. Chambers was not disciplined for any of the above incidents.

18. That, at 6:30 a.m. and again at 10:00 a.m. on September 25, 2019, Affiant conducted two briefings of members of the "alpha" squad. Among other things, Affiant stated that officers were to (1) avoid coming into the station unless work-related or to use the restroom and (2) stay out of Communications and not bring food, drinks, etc. to dispatchers. Chambers was in attendance at the 10:00 a.m. briefing.

19. That Affiant was in no way involved with Sgt. Gary submitting the Employee Incident Report which formed the basis for Investigation 19-051.

20. That Affiant submitted the Employee Incident Report which formed the basis for Investigation 20-015.

21. That Affiant has never commented on Chambers' hairstyle nor asked or commented about Chambers crying.

22. That Affiant has never treated Chambers different than any other officer based on her sex or gender.

23. That Affiant did not serve on the SWAT team at the same time as Sgt. Dale Deas.

24. That Affiant never asked Sgt. Deas to make Chambers' life hard and never encouraged him to harass Jordain Chambers.

25. That the facts contained above are true and correct based on Affiant's personal knowledge.

FURTHER AFFIANT SAYETH NOT.

**[Execution and Notarization on Following Page]**

## EXECUTION AND NOTARIZATION

_____
JAMES ROBERTS


Sworn to and subscribed before me by JAMES ROBERTS by means of __✓__ physical presence OR _____ online notarization, who is __✓__ personally known to me OR _____ has provided _____ as identification, this 7th day of January, 2022.

_____
NOTARY PUBLIC, STATE OF FLORIDA
Print Name: Makayla Chancey
Commission Expires: Mar. 29, 2025

MAKAYLA CHANCEY
Notary Public - State of Florida
Commission # HH 110207
My Comm. Expires Mar 29, 2025
Bonded through National Notary Assn.

(SEAL)