UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORDAIN CHAMBERS,

    Plaintiff,

v.

    Case No. 8:20-cv-2794-JLB-SPF

CITY OF LAKELAND,

    Defendant.

## Response to Motion for Summary Judgment

### I.    Background

Summary judgment is not appropriate, because Chambers and the City of Lakeland are like two ships passing in the night.[1] Each ship has its own truth. These are facts that coexist. Most, if not all, of the facts alleged by the City of Lakeland and Chambers are correct from their own perspective. In such a situation, a jury not the Court ought to decide if there is a violation of law. The City of Lakeland begs the Court to find its ship, the personification of its factual statements, is more seaworthy than Chambers' ship, the personification of her

---

[1] "Ships that pass in the night, and speak each other in passing, Only a signal shown, and a distant voice in the darkness[.]" Henry Wadsworth Longfellow, "The Theologian's Tale: Elizabeth," Part IV, stanza 1 (1874).

1

factual statement that was detailed in the Amended Complaint [D.E. 11] and

attested to under oath in her declaration. Rule 56 is not the appropriate

mechanism to resolve the dispute, the case ought to be resolved through the

Seventh Amendment.

The ultimate question in this Title VII case is which ship is more

persuasive. Federal law does not prohibit City of Lakeland from taking an

adverse employment action against Chambers. Rather, Congress prohibits

adverse employment actions that are motivated by unlawful animus. In other

words, who is at fault when it is dark in the middle of the ocean and no one is

watching where one ship is injured? No one will ever know for sure what has

happened to Chambers and why it occurred. The City of Lakeland wants the

Court to decide these questions. This case involves Chambers, a female police

officer, employed by the City of Lakeland who, after repeated, severe, pervasive,

public, and gender-fueled micro-aggressions by her male supervisor, took the

uncomfortable step of filing an internal discrimination complaint at work. After

filing her complaint, Chambers was investigated, placed on probation, prevented

from seeking pay raises, and prohibited from transferring out of her department

– all for the sole purpose of discouraging her from engaging in her statutorily-

protected rights to be free from gender discrimination while doing her job.

II.     **Discussion**

**A. Statement of Facts**

**i.     City of Lakeland**

1.  Plaintiff admits paragraphs 1 through 12, and 14-22.

2.  Plaintiff denies paragraph 13.

**ii.    Chambers**

1.      Chambers began working for the City of Lakeland in March 2018.

She is currently administrative medical leave. She is female and all of her

supervisors have been male. Declaration of Chambers ¶¶ 2 – 7.

2.      Chambers worked in geographic zones like other officers and

getting calls outside of one's assigned zone was supposed to be the exception not

the norm. Declaration of Chambers ¶¶ 8 - 14.

3.      Sgt. Chip Roberts became Chambers supervisor in early 2019 and

started targeting her because of her gender. He would criticize her for not

working fast enough even though he did not do the same to similarly situated

male employees and continued this discriminatory behavior. Declaration of Chambers ¶¶ 14 – 18, 37.

4.    Then Sgt. Roberts got his male SWAT buddies to support his bullying of Chambers because of her gender. Chambers knew it was because of her gender, because Sgt. Roberts would ask Chambers about her hair when he did not do the same to men, in fact the brotherhood of former SWAT males couldn't help themselves commenting on Chambers' feminine appearance. Declaration of Chambers ¶¶ 19, 41 - 45.

5.    Sgt. Roberts gave Chambers more work than similarly situated males, because of her gender. Declaration of Chambers ¶¶ 20 - 25.

6.    The discrimination was so bad that Chambers reported Sgt. Roberts to her Lieutenant, who refused to take her complaint seriously and attacked her integrity. Declaration of Chambers ¶¶ 26 - 28.

7.    Immediately (the next shift) after Chambers engaged in protected activity under Title VII, Sgt. Roberts publicly humiliated Chambers in a highly unusual and disturbing manner. Declaration of Chambers ¶¶ 29 - 36.

8.    Lt. Ty Thompson told Chambers to keep quiet, so Sgt. Roberts harassment and retaliation would subside. Declaration of Chambers ¶ 38. But

things got worse leading to physical illness and trauma. Declaration of Chambers

¶ 39. It was noticed by Chambers' colleague Drake Makey. Declaration of

Chambers ¶ 40.

9.      Chambers was forced to file a formal complaint against Sgt. Roberts,

because of his gender discrimination. Declaration of Chambers ¶¶ 46 - 62.

10.      The terms and conditions of Chambers employment changed as she

was retaliated against by Sgt. Roberts with the blessing of the City of Lakeland,

which has engaged in a pattern and practice of discrimination as well as

retaliation. Declaration of Chambers ¶¶ 63 – 90.

11.      City of Lakeland prefers men to women at its city police. It features

men on its website and encourages a good ole boy operation. Declaration of

Chambers ¶¶ 91 - 99. The City of Lakeland's conduct towards women and its

reaction to those that complain causes harm to the community. Declaration of

Chambers ¶¶ 100 – 105.  City of Lakeland is responsible for Chambers' valid

Title VII action. Declaration of Chambers ¶¶ 106 – 126.

### B. Title VII

Chambers was the only female officer on her squad, the only officer on her

squad with long hair, and the only officer on her squad who her wore her hair in

a bun. Chambers' male supervisor (the same supervisor who took tangible adverse employment actions against Chambers) made negative comments about Chambers' hairstyle and appearance leading up to the adverse employment actions alleged in this case. None of the male officers wore long hair in a bun. In fact, male officers are prohibited from wearing long hair.  In other words, it would be *impossible* to discriminate against the only officer with long hair worn in a bun *about* her hair in a bun without discriminating against that officer *because of her sex*. *See Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (June 15, 2020). The same goes for the repeated public mocking about Chambers being too busy to do her work because she was busy strip-searching women and the comments (in response to Chambers' internal complaints) that Chambers was always crying because she was "sensitive" and that she should "keep her head down." *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).[2]

As explained by Justice Gorsuch last year:

> The question isn't just what "sex" [means], but what Title VII says about it. Most notably, the statute prohibits employers from taking certain actions "because of" sex. And, as this Court has previously explained, "the ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" In the language of law, this means that

---

[2] *Superseded by statute at* 42 U.S.C. §§2000e-2(m), 2000e(g)(2)(b) (A defendant may still invoke lack of but-for causation as an affirmative defense, but only to stave off damages, not liability in general).

> Title VII's "because of" test incorporates the "simple" and "traditional" standard of but-for causation. That form of causation is established whenever a particular outcome would not have happened "but for" the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.
>
> This can be a sweeping standard. Often, events have multiple but-for causes. So, for example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision. When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020) (holding that employers violated Title VII of the Civil Rights Act of 1964 when they fired long-time employee shortly after the employee revealed that s/he was homosexual or transgender because it was impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex) (internal citations omitted).

Standing alone, a single or sporadic comment about a woman's hairstyle or whereabouts at work does not a Title VII violation make, any more than a man could allege gender discrimination for his supervisor's comments about his taking the afternoon off for a barbershop appointment. But an isolated incident or off-

7

hand comment is not what happened here. Chambers was the only female on the beat. She was picked on, berated, needled, and subjected to gender-based disparate treatment. She was harassed, not just because she was a woman, but because she complained about gender discrimination.[3] Chambers suffered real, tangible harm in the form of an unpaid suspension and inability to transfer out. She was so worried about losing her job she could not sleep. Working twelve-hour shifts on lack of sleep (or calling out of work because you are afraid to go in) is dangerous business when you're in the business of law enforcement.[4] City of Lakeland asks the Court to accept its ship, nothing more than an interpretation of what happened in the dark.

Chambers alleges direct evidence of unlawful animus. In the Eleventh Circuit, a plaintiff may prove his or her case using both direct *and* circumstantial evidence – including "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v.*

---

[3] *See* ELEVENTH CIRCUIT PATTERN CIVIL JURY INSTRUCTION 4.6, Comment I.B. (*citing Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012).

[4] DeVylder J., Lalane M., Fedina L. THE ASSOCIATION BETWEEN ABUSIVE POLICING AND PTSD SYMPTOMS AMONG U.S. POLICE OFFICERS, J. Soc. Work. Res., Vol. 10, No. 2, pgs. 261-273 (2019) (empirical study of the link between mental health of police officers and an increased likelihood that police officers will react to difficult situations with excessive force and/or violence).

*Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal citations omitted). Chambers' supervisor's comments about her hair, her appearance, her regular "female" strip searches, her "sensitive" nature and her "always crying" combined with: (1) the assignment of extra work to Chambers (but not the men); (2) the bullying against the one male co-worker who offered to help Chambers; (3) the making a joke of Chambers' internal complaints; and (4) the warning that Chambers should "keep her head down" after she engaged in protected activities are sufficient evidence for a jury to infer the unlawful intent permeating the decisions to investigate and suspend Chambers. *Id.*

Title VII prohibits retaliation "when an employee 'oppos[es] any practice made an unlawful employment practice by [Title VII]' or 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing.'" *Henderson v. City of Birmingham*, 826 Fed. Appx. 736, 741 (11th Cir. 2020) (*citing Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (internal citations omitted).

Chambers has shown that: (1) she was harassed publicly and to the point of physical ailment because of her gender; (2) she engaged in a statutorily protected expression (i.e. filed an internal gender discrimination complaint against her

harasser); (3) she suffered a materially adverse employment action (i.e. was placed on probation – limiting her ability to obtain pay increases and transfer to another department); and (4) there was a causal link between the protected expression and the adverse action (i.e. temporal proximity between her complaint and the adverse employment action and a swift, strict and intentional act designed to discourage Plaintiff's discrimination complaint).

Moreover, City of Lakeland (1) engaged in a pattern and practice of gender discrimination; (2) treated Chambers differently *because of* her gender; (3) harassed Chambers *because* she was the only female officer on the squad; (4) harassed Chambers *because* she complained about gender discrimination (i.e. retaliation); (5) took tangible adverse employment actions *because* Chambers is a woman *and because* she complained; and (6) engaged in a pattern and practice of discouraging and/or intimidating its female officers from complaining about their male supervisors (the same supervisors).

## III.   Conclusion

A jury considering the facts alleged in this action may, *at a minimum*, infer intentional discrimination and/or retaliation based on the convincing mosaic of

circumstantial evidence attested to by Chambers.[5] The Honorable Court ought not to grant summary judgment as a jury is most appropriate in this case to determine which ship passing in the night is in the right. "Trial by a jury of laymen rather than by the sovereign's judges was imposed to the founders because juries represent the layman's common sense, the 'passional elements in our nature,' and thus keep the administration of law in accord with the wishes and feelings of the community." OLIVER WENDELL HOLMES, COLLECTED LEGAL PAPERS 237 (1920).

Respectfully submitted this 3rd day of March 2022,

/s/ *Bernard R. Mazaheri*
Bernard R. Mazaheri
Florida Bar Number 643971
Mazaheri & Mazaheri
P.O. Box 656
Frankfort, Kentucky 40602
Tel – (502) 475-8201
Email – bernie@thelaborfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on this 3rd day of March 2022 using the Court's CM/ECF System which I understand will send a copy to all counsel of record.

/s/ *Bernard R. Mazaheri*
Bernard R. Mazaheri

---

[5] *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)

11